Hugh MALONE, Terry Gardiner, Brian Rogers, Jim Duncan, Fred Brown, Don Clocksin, Sam Cotten, Sally Smith, Mike Miller, Tony Vaska, and Fred Zharoff, individually and on behalf of the citizens of the State of Alaska, Appellants,

v.

Russ MEEKINS, Jr., Richard Halford, Mitchell Abood, Albert Adams, Charles Anderson, Ramona Barnes, Betty Cato, Jack Fuller, Michael Beirne, Robert Bettisworth, Bernard Bylsma, David Cuddy, Kenneth Fanning, E. J. Haugen, Joe Hayes, Vernon Hurlbert, Terry Martin, Ray Metcalfe, Joe Montgomery, Patrick O'Connell, Randy Phillips, Richard Randolph, Eric Sutcliffe, Dennis Jennings, Irene Cashen, and M. R. Charney, Appellees.

Russ MEEKINS, Jr., Richard Halford, Mitchell Abood, Albert Adams, Charles Anderson, Ramona Barnes, Betty Cato, Jack Fuller, Michael Beirne, Robert Bettisworth, Bernard Bylsma, David Cuddy, Kenneth Fanning, E. J. Haugen, Joe Hayes, Vernon Hurlbert, Terry Martin, Ray Metcalfe, Joe Montgomery, Patrick O'Connell, Randy Phillips, Richard Randolph, and Eric Sutcliffe, Cross-Appellants,

v.

Hugh MALONE, Terry Gardiner, Brian Rogers, Jim Duncan, Fred Brown, Don Clocksin, Sam Cotten, Sally Smith, Mike Miller, Tony Vaska, and Fred Zharoff, individually and on behalf of the citizens of the State of Alaska, Karla Hart, Irene Cashen, and M. R. Charney, Cross-Appellees.

Nos. 6429, 6436.

Supreme Court of Alaska.

Sept. 3, 1982.

---

Douglas Pope, R. Collin Middleton, Wagstaff, Middleton & Pope, Anchorage, for appellants/cross-appellees.

James T. Robinson, David A. Devine, Groh, Eggers, Robinson, Price & Johnson, Anchorage, for Legislative appellees/cross-appellants.

James L. Baldwin, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for Nonlegislator appellees/cross-appellees.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

In proceedings conducted on June 12 and June 16, 1981, the House of Representatives of the Twelfth Alaska State Legislature removed the existing Speaker and selected a new one. There followed a reorganization of the House with respect to leadership and standing committee assignments. This case was brought by the former Speaker, Representative Jim Duncan, and ten other state representatives seeking a declaration that the removal and replacement of Representative Duncan was illegal and unconstitutional.

The superior court ruled on cross-motions for summary judgment that while "the procedures used by the majority in accomplishing its will lacked woefully in decorum and the orderly parliamentary process by which the business of a public legislative body should be conducted," the replacement of the Speaker was nevertheless lawful.

An appeal was taken to this court on an expedited basis. We entered an order affirming the judgment of the superior court following oral argument on January 4, 1982. This opinion explains the reasons for our affirmance.

## I. BACKGROUND

The facts needed to understand this opinion are as follows. The Alaska State House of Representatives has 40 members. In 1981, 22 representatives were Democrats, 16 were Republicans and 2 were Libertarians. Representative Duncan was elected Speaker on February 2, 1981, the twenty-second day of the legislative session, on the votes of twenty-one representatives, all Democrats.

On June 12, 1981 the House was scheduled to meet at 10:00 a.m.[1] The customary ten minute and one minute warning bells were sounded, but Representative Duncan failed to convene the House at 10:00 a.m. This was because at about 8:30 a.m. that day he learned that there was an ongoing movement to replace him as Speaker. After consulting with several other representatives, Representative Duncan called a caucus of all Democratic representatives for 10:00 a.m. During the caucus it became apparent that at least three members of the Democratic caucus and presumably all of the Republicans and Libertarians would support a move to replace Representative Duncan as Speaker in favor of Representative Oral Freeman, another Democrat.

At about 11:00 a.m. Representative Richard Halford, a Republican, asked Representative Duncan when the session would

---

1. On the previous legislative day the session had been adjourned until 10:00 a.m. on the 12th. 1981 House Journal at 2112. Rule 13 of the Uniform Rules of the Alaska State Legislature provides:

> Each house shall convene daily, except Sunday, at 10:00 a.m., unless otherwise ordered by a majority vote of the members present.

begin. He received a non-committal response.[2] At approximately 2:00 p.m. Representative Russ Meekins, then House Majority Leader, assumed the chair of the House and called it to order. No advance notice of this meeting was given to Representative Duncan or his supporters, but they were immediately apprised of it because proceedings in the House Chambers were broadcast by a speaker system to various offices in the Capitol Building, including that of Representative Duncan. With Representative Meekins in the chair, the House voted, on a count of 21 to 0 with 19 not voting, to remove Representative Duncan as Speaker and, on a vote of 22 to 0 with 18 not voting, elected Representative Freeman as the new Speaker. The House then adjourned for the day.[3]

The 12th of June was a Friday. Some time after the session of the 12th was adjourned, Representative Freeman announced that he would not assume the Speakership. On the 14th this lawsuit was filed and on the 15th a temporary restraining order was sought. A hearing on the motion for temporary restraining order was conducted on the 15th and was carried over to 9:00 a.m. on the 16th. During the court proceedings on the 16th counsel for the appellees announced that the House, which had not met since the 12th, would convene at 10:00 a.m. that day.

The House was convened by Representative Halford at 10:01 a.m. He first presented a document signed by 22 representatives stating:

> We, the undersigned members of the Alaska State House of Representatives do hereby form a majority caucus and have elected Representative Rick Halford as our Majority Leader.

**2.** According to Representative Duncan:
> I indicated to Mr. Halford that we were still in party caucus, that they'd be notified of the termination of that caucus and when the session was to begin.

According to Representative Halford:
> [T]he gist that I got was "when and if I'm damned good and ready."

**3.** This account of the June 12th activities on the House floor expresses only the bare actions

After the existence of a quorum was determined Representative Halford declared the position of Speaker to be vacant. Representative Patrick O'Connell moved that nominations be opened for Speaker. That motion was carried on a roll call vote of 22 yeas, no nays and 18 not voting. Representative Joe Hayes was then nominated as Speaker. A motion to close nominations was made and carried 22 to 0 with 18 not voting, and, by the same count, Representative Hayes was elected. On each of these motions appellants attempted to debate the legality of the proceedings, but their attempts were cut off by rulings that the motions were not debatable.[4]

## II. ISSUES

On appeal appellants raise four distinct issues:

(1) whether the removal of Representative Duncan from the Speakership required that two-thirds of each House vote to suspend or amend the legislature's Uniform Rules of Procedure;

(2) whether Representative Halford usurped the authority of the Speaker by convening the June 16th meeting of the House;

(3) whether reasonable notice of the June 16th meeting was given to appellants and the public;

(4) whether appellants were denied their right to speak freely on the floor of the House at the June 16th meeting.

Appellants assert that the proper resolution of these issues mandates that the removal and replacement of Representative Duncan as Speaker be declared invalid.

that were taken. The character of those proceedings is more fully described at pages 2113–27 of the 1981 House Journal, which are reproduced as Appendix A to this opinion.

**4.** Pages 2135–47 of the 1981 House Journal, which describe the June 16th proceedings that led to the election of Representative Hayes as Speaker, are reproduced as Appendix B to this opinion.

## A. Failure to Suspend or Amend the Uniform Rules

Uniform Rule 1 provides that the permanent presiding officer of each House shall be the nominee receiving a majority of the votes of the full membership and that he shall assume the chair for the two year period that the legislature is in session.[5] Rule 4 defines the duties of the presiding officer as follows:

> The presiding officer of each house has the duties set forth in section 575, MASON'S MANUAL OF LEGISLATIVE PROCEDURE, when not inconsistent with these Uniform Rules. In the absence of the regular presiding officer, the majority leader of the house serving ex officio as presiding officer pro tempore shall preside; except that the regular presiding officer may temporarily relinquish the chair to any member.

The Uniform Rules do not specifically address the subject of the Speaker's removal. However, Rules 52 and 53 provide that the Uniform Rules may be amended or suspended by a concurrent resolution approved by two-thirds of the membership of each House.

Appellants argued below that in order to remove Representative Duncan from his position as Speaker it was necessary to suspend or amend the Uniform Rules. They argued that this had not been accomplished since neither a two-thirds vote of the membership of the House nor of the Senate was obtained. At oral argument, however, appellants abandoned this argument. They acknowledged that a majority of the members of the House may remove the presiding officer at any time.[6]

■ We accept appellants' concession as it is consistent with our reading of the second sentence of Art. II, § 12 of the Alaska Constitution which provides that "[e]ach house may choose its officers and employees."[7] At least two concepts are implicit in that grant of authority: (1) each House has the exclusive power to remove as well as choose its own officers without any participation by the other House; (2) a majority vote of the members of the body is all

---

**5.** Subsections (a) and (b) of Uniform Rule 1 provide:

> (a) At the time for convening of the first regular session of a legislature the lieutenant governor calls each house to order separately and calls the roll of members whose election has been certified. He then administers the oath of office to the new members and, pending the election of temporary presiding officers, preserves order and decorum in the house.
>
> (b) When the house by a majority of the full membership vote selects a temporary presiding officer he assumes the chair and the lieutenant governor withdraws. The chair then calls for nominations for a permanent presiding officer and the nominee receiving a majority of the votes of the full membership assumes the chair for the two-year duration of the legislature.

**6.** Appellants still contend, however, that such removal must be preceded by fair notice and an opportunity to debate. We discuss these contentions *infra*.

**7.** The full text of Art. II, § 12 of the Alaska Constitution provides:

> *Section 12. Rules.* The houses of each legislature shall adopt uniform rules of procedure. Each house may choose its officers and employees. Each is the judge of the election and qualifications of its members

and may expel a member with the concurrence of two-thirds of its members. Each shall keep a journal of its proceedings. A majority of the membership of each house constitutes a quorum to do business, but a smaller number may adjourn from day to day and may compel attendance of absent members. The legislature shall regulate lobbying.

We do not regard the first sentence of § 12 as a constitutional mandate that there be uniformity of proceedings in both Houses with respect to the removal and selection of officers. A reading of the Proceedings of the Alaska Constitutional Convention makes clear that such uniformity was not intended to apply to matters pertaining to the internal organization of each House:

> Delegate McCutcheon: The reason that the [second sentence of Art. II, § 12] was established in this part of the act was to give them the out of establishing different fashions in setting up the context of their employee groups and so forth, but the matter of handling the procedure of the bills in the course of their processes, and the transmission shall be identical. That is what we intended.
>
> Delegate Riley: Simply those matters where their actions touch on one another?
>
> Delegate McCutcheon: Yes.

3 Proceedings of the Alaska Constitutional Convention 1817 (January 11, 1956).

that is required to either elect or remove an officer. *See In re Speakership of the House of Representatives,* 15 Colo. 520, 25 P. 707 (1891); *Cliff v. Parsons,* 90 Iowa 665, 57 N.W. 599 (1894); *Opinion of the Justices,* 111 N.H. 175, 278 A.2d 475 (1971). Each of these concepts disposes of the argument that the Uniform Rules barred the removal of Representative Duncan as Speaker. To require that a vote to remove the Speaker of one House be preceded by a vote of two-thirds of each House to suspend or amend the Uniform Rules would effectively frustrate the will of a majority of a legislative body and involve each House in the selection of officers of the other.

B. Usurpation of Power

■ Appellants' next contention is that Representative Halford usurped power in convening the June 16th meeting of the House. They assert that AS 24.10.020[8] necessarily means that only the presiding officer may convene meetings of the House except when he has resigned, died, or become incapacitated. Since none of these exigencies had occurred, appellants argue that only Representative Duncan had the authority to convene the House on June 16th.

It bears noting that appellants' position presupposes that the June 12th meeting was invalid. If that meeting was valid, there would have been no Speaker on June 16th and Representative Halford, selected as Majority Leader by the new majority caucus, would have been the logical person to convene the body. However, we find it unnecessary to determine the validity of the actions taken at the June 12th meeting. Nor do we address appellants' assertion that by implication AS 24.10.020 vested sole authority in Representative Duncan to convene the June 16th meeting. For we con-clude that even if appellants' premises are correct it would still be improper for a court to declare the June 16th election of Representative Hayes to the Speakership invalid.

Such a declaration would, in our view, be an unwarranted intrusion into the business of the House. To be sure, the judicial branch of government has the constitutionally mandated duty to ensure compliance with the provisions of the Alaska Constitution, including compliance by the legislature.[9] But a statute such as AS 24.10.020 relates solely to the internal organization of the legislature, a subject which has been committed by our constitution to each house. Insofar as compliance with such a statute is concerned, we believe that a proper recognition of the respective roles of the legislature and the judiciary requires that the latter not intervene.

Our decision on this point is in accord with the established principle that courts should not attempt to adjudicate "political questions." *See, e.g., Powell v. McCormack,* 395 U.S. 486, 518, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491, 515 (1969); *Baker v. Carr,* 369 U.S. 186, 210, 82 S.Ct. 691, 706, 7 L.Ed.2d 663, 682 (1962); *Coleman v. Miller,* 307 U.S. 433, 454, 59 S.Ct. 972, 982, 83 L.Ed. 1385, 1396 (1939). The view that such questions are nonjusticable stems primarily from the separation of powers doctrine. *Baker v. Carr,* 369 U.S. at 210, 82 S.Ct. at 706, 7 L.Ed.2d at 682. As noted by the Court in *Baker:* "[I]t is the relationship between the judiciary and the coordinate branches of the ... Government ... which gives rise to the 'political question.'" *Id.*

This is not to say that merely characterizing a case as political in nature will render it immune from judicial scrutiny. In *Baker* the United States Supreme Court was careful to point out the "confusion [which may

---

**8.** AS 24.10.020 provides:

 *Presiding officers pro tempore.* The majority leader of each house serves as the presiding officer pro tempore of that house if the elected presiding officer resigns, becomes incapacitated, or dies. The presiding officer pro tempore is authorized to perform the duties of that office until the house elects a regular presiding officer, and the election

shall be made the order of business of the house at the earliest appropriate hour.

**9.** *See, e.g., State v. A.L.I.V.E. Voluntary,* 606 P.2d 769 (Alaska 1980); *Plumley v. Hale,* 594 P.2d 497 (Alaska 1979); *K & L Distributors, Inc. v. Murkowski,* 486 P.2d 351, 357 (Alaska 1971).

result] from the capacity of the 'political question' label to obscure the need for case by case inquiry." 369 U.S. at 210–11, 82 S.Ct. at 706, 7 L.Ed.2d at 682. However, the Court in that case did identify various elements, one or more of which is "[p]rominent on the surface of any case held to involve a political question. . . ." *Id.* at 217, 82 S.Ct. at 710, 7 L.Ed.2d at 686. These elements included: (1) a textually demonstrable commitment of the issue to a coordinate political department; (2) the impossibility of a court's undertaking an independent resolution of the case without expressing lack of respect due coordinate branches of government; and (3) the need for adherence to a political decision already made. *Id.; see also Powell v. McCormack,* 395 U.S. 486, 518, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491, 515 (1969); *Leek v. Theis,* 217 Kan. 784, 539 P.2d 304, 327–28 (1975); *Sweeny v. Tucker,* 473 Pa. 493, 375 A.2d 698, 706 (1977). In our view, each of these elements is present in the instant case.

It is clear that the matter of the election or removal of the Speaker of the House has been committed to the House. Article II, § 12 of the Alaska Constitution expressly so provides.[10] Similar provisions in other state constitutions have been construed to mean that the power of one house of a state legislature to select or remove its officers may not be impeded or controlled by statute. *Opinion of the Justices,* 111 N.H. 175, 278 A.2d 475, 476 (1971); *Cliff v. Parsons,* 90 Iowa 665, 57 N.W. 599, 601 (1894). Also involved here is the element of due respect which the judiciary owes to the independent and coequal legislative branch of government. One of the primary purposes of our separation of powers system is "to safeguard the independence of each branch of the government and protect it from domination and interference by the others." *Bradner v. Hammond,* 553 P.2d 1, 6 n. 11 (Alaska 1976), *quoting* C. Antieau, 2 Modern Constitutional Law § 11:13, at 200 (1st ed. 1969). For the courts to assume responsibility for overseeing the officer selection process of a legislative body would be high-

ly intrusive and, in our opinion, inconsistent with the respect owed the legislature by the judiciary. Of significance too is the need to attribute finality to the action taken by the House. While the June 1981 reorganization did disrupt the legislative processes of the House for a few days, the important point is that the crisis passed, the House reorganized, and has since been engaged in legislative activity, all without judicial intervention. Intervention by a court at this point would be apt once again to disrupt the legislative processes of the House. Nor is it at all clear that judicial intervention during the reorganization would have shortened it or otherwise have been of benefit.

The appellants have suggested that one result of our ruling will be chaos in legislative proceedings. We trust that this will not be the case. Whether it is depends on those elected to serve in each successive legislature. While a legislative body's leadership may be changed at any time a majority wishes it, the avoidance of chaos during such a change depends primarily on the sense of decency, fair play, and mutual respect of the contestants. Beyond that, we can only observe that the Alaska Constitution itself provides a measure of protection against pervasive and longlasting disorder in the legislature for it requires the faithful observance of detailed procedures for law enactment. *See* Art. III, §§ 13, 14, Alaska Constitution. Such observance is unlikely to be achieved under conditions of disorder.

> The Alaska Constitution defines with specificity the mechanics of legislation. Each provision has a purpose "designed to engender a responsible legislative process worthy of the public trust."

*State v. A.L.I.V.E. Voluntary,* 606 P.2d 769, 772 (Alaska 1980), *quoting Plumley v. Hale,* 594 P.2d 497, 500 (Alaska 1979).

C. Reasonable Notice

We now turn to appellants' argument that the June 16th meeting was not preceded by reasonable notice to the appellants or to the public. Appellants offer three separate theories which give rise to a require-

---

10. *See* note 7 *supra.*

ment of reasonable notice. First, they contend that Representative Duncan had an interest in the office of Speaker which was protected by the due process clauses of the fourteenth amendment to the United States Constitution and Art. I, § 7 of the Alaska Constitution. They claim that the constitutional process due Representative Duncan included reasonable advance notice of the time, place and subject matter of the meeting. Second, appellants argue that AS 44.-62.310–.312, the Alaska Public Meetings Law, applies and requires the same type of notice. Finally, appellants contend that the Uniform Rules of the legislature impose a requirement of reasonable notice.

Before addressing these arguments we note at the outset that appellants do not seriously maintain that they were unaware of the time and place of the June 16th meeting. Their real contention relates to the absence of reasonable notice that reorganization of the House would be the subject matter of the meeting. Moreover, while we can accept appellants' claim that the appellees did not give them subject matter notice, in the context of all that had taken place on the 12th and thereafter, it strains credulity to assert that any of the appellants would not have known that the first order of business at any legislative meeting called by the apparent new majority would necessarily be the formal reorganization of the House.[11] However, we need not determine whether actual subject matter notice was given, for in our view there is no judicially enforceable requirement of subject matter notice with respect to a vote concerning the organization or reorganization of one House of the state legislature.

With regard to appellants' due process argument, we have been cited to no authority indicating that a state legislature is constitutionally required to publish a calendar in advance of its daily activities, or to adhere to such a calendar if it has one. Indeed, the Uniform Rules anticipate that without notice, but by approval of two-thirds of the members present, previously uncalendared matters may be taken up.[12] Nor can we accept appellants' assertion that the fact that Representative Duncan had certain prerogatives as Speaker meant that he was entitled to advance subject matter notice that a vote to replace him would occur.[13] The only process which the presiding officer is due under the constitution is that the meeting be legal in the constitutional sense[14] and that a majority of the membership concur in the action taken.

Turning to appellants' statutory argument, AS 44.62.310(a) states that "[a]ll meetings of a legislative body ... of the state ... are open to the public except as otherwise provided by this section." This plainly includes the state legislature. With respect to notice, subsection (e) of that statute provides:

> Reasonable public notice shall be given for all meetings required to be open under this section.

---

**11.** Indeed, in his deposition, Representative Gardiner, an appellant herein, stated that on the morning of the 16th prior to the beginning of the session, he told certain other of the appellants that he had heard that the appellees were planning to call the House to order and elect Representative Hayes as Speaker.

**12.** Uniform Rule 17 provides for a set daily order of business "[u]nless changed by a vote of two-thirds of the membership of the house...." Uniform Rule 18(a) provides for changes to a calendar if authorized by two-thirds of the membership present. Uniform Rule 19 provides that any subject not otherwise provided for in the rules may be taken up as a special order of business by a vote of two-thirds of the members present.

**13.** Appellants argue that Representative Duncan had a protected "property" interest in the Speakership and was therefore constitutionally entitled to notice, a hearing and an opportunity to be heard before being removed as Speaker. However, the asserted basis of this interest is that the office of Speaker is held for a fixed term, giving rise to an expectation of continuity in office for the duration of that term. As we have previously indicated, one serves as the presiding officer of one House of the state legislature solely at the will of that body. Representative Duncan thus had no "property" interest in the office of Speakership protected by due process. *See Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981).

**14.** That is, primarily, that the meeting be preceded by notice of its time and place.

According to appellants, "reasonable public notice" includes subject matter notice.

 However, it is unnecessary for us to decide whether the term "reasonable public notice" encompasses notice of subject matter for two reasons. First, for the reasons expressed in part IIB of this opinion, we regard this question as it relates to the internal organization of one of the Houses of the legislature to be nonjusticiable. Second, the statute contains an express exemption applicable "to any votes required to be taken to organize [the entities to which the section applies]." AS 44.62.-310(a). Although the appellants contend that this exemption relates only to meetings in private caucus and not to meetings which take place on the floor of the House, this argument is plainly wrong. The statute has no application to private caucuses and there is thus no reason to exempt from the statute organizational votes which take place in such caucuses. The Public Meetings Law does generally apply to votes on the floor of either House of the legislature, but exempts organizational votes taken there, such as removal of the Speaker, from its coverage.

 Appellants are correct that certain of the Uniform Rules, namely Rules 17 and 18, are designed to impart subject matter notice, subject to changes brought about by a two-thirds vote of the membership. However, except in extraordinary circumstances, as where the rights of persons who are not members of the legislature are involved, it is not the function of the judiciary to require that the legislature follow its own rules.[15] Indeed, we can think of few actions which would be more intrusive into the legislative process than for a court to function as a sort of super parliamentarian to decide the varied and often obscure points of parliamentary law which may be raised in the course of a legislative day. Thus, even though the Uniform Rules' requirements with respect to subject matter notice may have been violated, such violation is solely the business of the legislature and does not give rise to a justiciable claim.

### D. The Right to Speak Freely on the Floor

 Appellants' final contention is that they were denied the right to speak freely on the floor of the House at the June 16th meeting. This, appellants argue, violated the first amendment to the United States Constitution and the free speech clause of Art. I, § 5 of the Alaska Constitution. The actions specifically complained of are apparently those of Representative Halford who, acting as Speaker Pro Tem, ruled that there could be no debate of the motions to open nominations for the position of Speaker, to close nominations, and to name Representative Hayes as Speaker of the House.[16]

There are various types of motions which are considered not debatable as a matter of parliamentary law.[17] The rules restricting debate on such motions do have the effect

---

**15.** *See United States v. Smith,* 286 U.S. 6, 33, 52 S.Ct. 475, 477, 76 L.Ed. 954, 958–59 (1932); *Consumers Union of United States, Inc. v. Periodical Correspondents' Ass'n,* 365 F.Supp. 18, 24 (D.D.C. 1973); *see also* P. Mason, Manual of Legislative Procedure § 24(4) at 53 (1979).

**16.** Representative Halford made these rulings citing as authority § 308 of Mason's Legislative Manual, which provides in relevant part:

1. Motions relating to voting, nominations, or elections, have a higher precedence than questions out of which they arise and must be decided before proceeding with the voting, nomination or election. They take precedence following motions relating to manner or order of considering questions, and before division of questions.

2. Such motions are not debatable because they are simple procedural motions requiring immediate determination and for the same reason not subject to subsidiary motions, except the motion to amend. Decisions on these questions are not subject to reconsideration and decisions are ordinarily promptly carried out.

P. Mason, Manual of Legislative Procedure § 308, at 234 (1979). We express no view as to whether Representative Halford correctly applied this section in making his rulings.

**17.** According to Mason's Manual of Legislative Procedure, the following motions are not debatable:

(a) Adjourn. (unqualified)

(b) Call of the house.

(c) Recess, when other business is pending.

(d) Parliamentary inquiry.

of terminating speech on the floor of a legislative body. They have a long tradition in American and English parliamentary history, *see Parker v. Merlino*, 646 F.2d 848, 854 (3rd Cir. 1981), and are generally regarded as reasonable and necessary in order "to enact needed legislation without the delay or potential frustration resulting from continued debate." *Id.* Imposition of such rules does not violate constitutional guarantees of freedom of speech. *Id.* at 853–55.

For the above reasons, the judgment is AFFIRMED.

APPENDIX A

# HOUSE JOURNAL

## ALASKA STATE LEGISLATURE

### TWELFTH LEGISLATURE – FIRST SESSION

| JUNEAU, ALASKA | Friday | June 12, 1981 |
|---|---|---|

*One hundred fifty-second Day*

The Chief Clerk was not on the floor when the session convened. The following was taken from the tape:

Representative Meekins assumed the Chair and stated that under Rule 4 of the Joint Rules, as majority leader he convened the House.

Representative Halford moved that all members not on the floor now be excused from a call of the House for the remainder of the session and asked unanimous consent.

Representative Meekins stated it was so ordered.

Representative Halford moved that Jim Duncan be removed as Speaker of the House.

The Chief Clerk and two assistants arrived at 2:06 p.m.

Representative Meekins asked that the Chief Clerk take the roll. Not having heard the question, the Chief Clerk entered "Quorum" and Representative Meekins stated the first vote would be entered as a quorum call. There being no objection, it was so ordered and the quorum call appears as follows:

QUORUM

Yeas: 21 Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 2 Brown, Smith

Not Voting: 17 Buchholdt, Carney, Cato, Chuckwuk, Clocksin, Cotten, Duncan, Freeman, Fuller, Gardiner, Grussendorf, Malone, Miller, Moss, Rogers, Vaska, Zharoff

(e) Call for the orders of the day.
(f) Questions relating to priority of business.
(g) Suspension of the rules.
(h) Objection to the consideration of a question.
(i) Other incidental motions.
(j) Lay on the table.
(k) Previous question.
(*l*) Motions to close, limit or extend the limits of debate.
(m) Amend an undebatable motion.
(n) Amend titles of bills.
(*o*) Divide a question, when right is given by rule.
(p) Motion to lay aside or pass on calendar or file.
(q) Take from the table.
(r) Requests of any kind.
(s) A decision of the presiding officer, unless an appeal is taken from the decision. *Id.* § 82(a), at 93–94.

Representative Meekins then stated the question before the House was: "Shall Jim Duncan be removed as Speaker of the House?"

Representative Meekins stated he will be voting at Representative Duncan's station.

Representative Smith placed a call of the House.

Representative Meekins stated that the call was out of order because the absent members were excused from a call of the House.

Representative Brown rose to a point of order. If a member is speaking in the middle of the roll call you must stop the vote. He also stated it is an illegally constituted proceeding if the Speaker has not designated you to sit in his place.

Representative Meekins stated his point of order was not well taken. It takes 21 votes to remove the Speaker. The Chief Clerk will take the roll.

Representative Smith contested the ruling of the Chair stating this is not an appropriate proceeding.

Representative Brown rose to a point of order. You cannot conduct a roll call vote when members are still standing and addressing the body.

Representative Meekins ruled Representative Brown out of order.

Representative Brown appealed the ruling of the Chair.

The question being: "Shall the ruling of the Chair be sustained?" On voice vote, the Chair was sustained.

Representative Smith asked for a roll call vote.

Representative Meekins ruled Representative Smith out of order. The Chair has been sustained by a majority.

Representative Miller rose to a point of order questioning by what authority he assumed the Chair.

Representative Meekins stated that he did under Rule 4 of the Joint Rules. The House was not convened at 10:00.

Representative Meekins restated the question: "Shall Jim Duncan be removed from the Speaker of the House?"

Representative Miller rose to a point of order stating that it would be an illegal vote. He stated he refused to vote on an illegal action.

Representative Meekins stated he had already ruled and the ruling was sustained by the House.

Representative Miller appealed the ruling and placed a call of the House.

Representative Meekins ruled him out of order.

The question being: "Shall Jim Duncan be removed as Speaker of the House?" The roll was taken with the following result:

JIM DUNCAN

| | | |
|---|---|---|
| Yeas: | 21 | Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe |
| Nays: | 0 | |
| Not Voting: | 19 | Brown, Buchholdt, Carney, Cato, Chuckwuk, Clocksin, Cotten, Duncan, Freeman, Fuller, Gardiner, Grussendorf, Malone, Miller, Moss, Rogers, Smith, Vaska, Zharoff |

Representative Meekins stated he had voted in the Speaker's Chair.

Representative Meekins stated the motion passed.

Representative Brown rose to a point of order. There are several members that were not voting and were here. This is one of the obvious defects of this vote.

Representative Meekins ruled his point of order was not well taken.

Representative Brown stated Speaker Duncan was elected for the two-year duration. Under the Uniform Rules, it would take 27 votes for a suspension of the rules and a concurrent resolution passed by both Houses.

Representative Meekins stated that Representative Brown was out of order and his point of order was dilatory.

Representative Halford moved that nominations for Speaker of the House be open and asked unanimous consent.

Representative Smith objected.

The question being: "Shall nominations be open for Speaker of the House?" On voice vote, Representative Meekins stated the motion carried.

Representative Halford nominated Representative Oral Freeman as Speaker of the House.

Representative Miller placed a call of the House.

Representative Meekins stated the call of the House was out of order.

Representative Halford moved that the nominations be closed.

Representative Meekins stated that without objection, the nominations are closed.

Representative Miller placed a call of the House on that motion. No one can be excused unless they are out of town or ill.

Representative Meekins stated his ruling had been appealed and sustained by a majority of the body and ruled Mr. Miller out of order.

Representative Clocksin rose to a point of order asking if he was a present member or is the excuse still valid even though I am on the floor.

Representative Meekins ruled that it would be valid.

Representative Brown rose to a point of parliamentary inquiry as to whether members could be present on the floor and excused from voting.

Representative Miller moved that the House adjourn.

Representative Meekins stated it was his ruling from the Attorney General's opinion and having researched the question that when 21 members wish to remove a speaker and replace him you cannot interfere with that act.

Representative Brown stated that there were several members here and not voting.

Representative Halford rose to a point of order. Representative Meekins is Speaker Pro Tempore under Rule 4 of the Uniform Rules.

Representative Meekins stated his point was well taken.

Representative Clocksin stated he was on the floor during the vote and was not allowed to vote because the roll was closed before I reached my seat and I object to this vote.

Representative Smith stated she hoped to contest it in court because this was an illegal session.

Representative Halford moved the previous question.

Representative Miller asked for a recess for a Democratic caucus.

Representative Barnes objected.

Representative Miller stated he wanted it on the record that he was not aware this session had started. No bell was rung. I would like the record to show that people who were excused were not even notified. We had no opportunity to call the House on the motion.

Representative Meekins stated he would not respond.

Representative Clocksin rose to a point of order and stated under Rule 4 that someone can only sit in the Chair in the absence of the regular presiding officer. I was sitting in the caucus room with the presiding officer when this meeting was called. You have violated Rule 4.

Representative Halford withdrew his motion for the previous question.

Representative Clocksin rose to a point of order asking for a ruling on his point of order.

Representative Meekins stated he had already ruled on that question and it has been appealed and sustained.

Representative Cotten asked of the Chair if he had been excused from a call of the House.

Representative Meekins stated he was.

Representative Cotten asked if he could sit in his place and not vote. He asked for a ruling of the Chair.

Representative Miller stated he had the same question as Representative Cotten and asked for a ruling from the Chair. Is the

ruling that members who were excused can be present and not vote?

Representative Halford stated any member not voting is violating the Rules himself and further stated that the will of the majority cannot be thwarted.

Representative Meekins so ruled.

Representative Miller stated he would not vote under an illegal set of circumstances.

Representative Meekins stated the question: "Shall Representative Freeman be elected Speaker?"

Representative Malone moved for a recess for a Democratic caucus.

Representative Barnes objected.

The question being: "Shall the House recess for a Democratic caucus?" On voice vote, the motion failed.

Representative Meekins stated the House will not recess as a majority did not want a recess.

Representative Gardiner moved for a recess for the purpose of a Democratic caucus and requested a roll call vote.

Representative Meekins stated he was voting at Speaker Duncan's station.

The question being: "Shall the House recess for the purpose of party caucus?" The roll was taken with the following result:

RECESS

| Yeas: | 12 | Brown, Buchholdt, Cato, Clocksin, Cotten, Fuller, Gardiner, Grussendorf, Malone, Miller, Smith, Vaska |
|---|---|---|
| Nays: | 12 | Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe |
| Not Voting: | 7 | Carney, Chuckwuk, Duncan, Freeman, Moss, Rogers, Zharoff |

And so, the motion failed.

Representative Gardiner moved for adjournment and requested a roll call vote.

Representative Meekins will be voting in Speaker Duncan's place.

The question being: "Shall the House adjourn?" The roll was taken with the following result:

ADJOURN

| Yeas: | 12 | Brown, Buchholdt, Clocksin, Cotten, Fuller, Gardiner, Grussendorf, Malone, Miller, Smith, Vaska, Zharoff |
|---|---|---|
| Nays: | 21 | Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe |
| Not Voting: | 7 | Carney, Cato, Chuckwuk, Duncan, Freeman, Moss, Rogers |

And so, the motion failed.

Representative Gardiner moved for an at ease and requested a roll call vote.

The question being: "Shall the House take an at ease?" The roll was taken with the following result:

AT EASE

| Yeas: | 12 | Brown, Buchholdt, Clocksin, Cotten, Fuller, Gardiner, Grussendorf, Malone, Miller, Smith, Vaska, Zharoff |
|---|---|---|
| Nays: | 22 | Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cato, Cuddy, Duncan, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe |
| Not Voting: | 6 | Carney, Chuckwuk, Freeman, Meekins, Moss, Rogers |

And so, the motion failed.

Representative Halford moved that under Rule 33(b) those members on the floor wishing not to vote may be excused from voting.

Representative Miller objected.

Representative Meekins stated the question: "Shall the members on the floor be excused?

Representative Miller rose to a point of order. Under Rule 33(b), it must be unanimous.

Representative Halford withdrew his motion.

The question being: "Shall Representative Freeman be elected Speaker of the House?" The roll was taken with the following result:

FREEMAN SPEAKER

| Yeas: | 22 | Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cato, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, |
|---|---|---|

Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 0

Not Voting 18 Brown, Buchholdt, Carney, Chuckwuk, Clocksin, Cotten, Duncan, Freeman, Fuller, Gardiner, Grussendorf, Malone, Miller, Moss, Rogers, Smith, Vaska, Zharoff

And so, the motion carried.

Representative Brown rose to a point of order and stated that Representative Gardiner, Miller, Smith, Cotten, I and other members were on the floor who didn't vote, therefore the election was illegal.

Representative Halford moved to adjourn until 10:00 Monday morning.

Representative Miller objected.

Representative Miller rose to a point of order. Twenty-two is not enough votes according to our own agency to elect a new speaker. To change that, we would have to suspend the Rules. It takes 27 votes for a concurrent resolution to pass both houses and no resolution was introduced.

Representative Meekins ruled his point of order was not well taken.

Representative Gardiner rose to a point of order.

Representative Hayes rose to a point of order stating Representative Gardiner was not speaking to the motion before us.

Representative Meekins ruled Representative Hayes point was well taken.

Representative Brown moved to amend the motion to 12:01 a.m. tomorrow.

Representative Barnes objected.

The question being: "Shall the motion to adjourn until Monday be amended to 12:01 a.m. tomorrow?" The roll was taken with the following result:

ADJOURN TO 12:01 A.M.

Yeas: 12 Brown, Buchholdt, Carney, Cotten, Fuller, Gardiner, Grussendorf, Malone, Miller, Smith, Vaska, Zharoff

Nays: 21 Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Not Voting: 7 Cato, Chuckwuk, Clocksin, Duncan, Freeman, Moss, Rogers

And so the motion failed.

Representative Hayes amended the motion to 10:05 a.m. Monday.

Representative Smith objected.

The question being: "Shall the House adopt the amendment to the motion, namely 10:05 a.m. Monday morning?" The roll was taken with the following result:

ADJOURN TO 10:05 MONDAY A.M.

Yeas: 22 Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Meekins, Metcalfe, Montgomery, Moss, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 7 Buchholdt, Fuller, Grussendorf, Malone, Miller, Smith, Vaska

Not Voting: 11 Brown, Carney, Cato, Chuckwuk, Clocksin, Cotten, Duncan, Freeman, Gardiner, Meekins, Rogers, Zharoff

And so, the motion passed.

Representative Brown rose to a point of order stating that all members who were on the floor did not vote.

Representative Meekins ruled that he had ruled on that point previously.

Representative Meekins will be voting in Speaker Duncan's station.

The question being: "Shall the amended motion to adjourn until 10:05 Monday morning pass the House?" The roll was taken with the following result:

ADJOURN TO 10:05 MONDAY

Yeas: 21 Abood, Adams, Anderson, Barnes, Beirne, Bettisworth, Bylsma, Cuddy, Fanning, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Meekins, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 0

Not Voting: 19 Brown, Buchholdt, Carney, Cato, Chuckwuk, Clocksin, Cotten, Duncan, Freeman, Fuller, Gardiner, Grussendorf, Malone, Meekins, Miller, Moss, Rogers, Smith, Vaska, Zharoff

And so, the motion passed and the House adjourned at 2:40 p.m.

## ENGROSSMENT

The reconsideration of the following was not taken up this legislative day:

*HCSSB 49 (Res) (efd failed)*

(limited entry to commercial fisheries)

It is being engrossed.

Legislative counsel advised the Chief Clerk to record the proceedings of both sessions. It is not up to the Chief Clerk to decide the legality of either session.

*One hundred fifty-second Day*

The House was called to order by Representative Duncan at 4:20 p.m.

Representative Rogers moved that the House adjourn. There being no objection, the House adjourned at 4:21 p.m.

Irene Cashen

Chief Clerk

## APPENDIX B

# HOUSE JOURNAL

## ALASKA STATE LEGISLATURE

### TWELFTH LEGISLATURE – FIRST SESSION

| JUNEAU, ALASKA | Tuesday | June 16, 1981 |
|---|---|---|

*One hundred fifty-sixth Day*

Representative Halford assumed the Chair.

The House was called to order at 10:01 a.m. by Representative Halford.

Representative Halford asked the Chief Clerk to read the following document:

"We, the undersigned members of the Alaska State House of Representatives do hereby form a majority caucus and have elected Representative Rick Halford as our Majority Leader.

Signed:

| | | |
|---|---|---|
| /s/ Joe L. Hayes | Date: | 6/14/81 |
| /s/ Jack Fuller | | 6/14/81 |
| /s/ Vernon Hurlbert | | 6/14/81 |
| /s/ Eric G. Sutcliffe | | 6/14/81 |
| /s/ Terry Martin | | 6/14/81 |
| /s/ Bette Cato | | 6/14/81 |
| /s/ Albert P. Adams | | 6/14/81 |
| /s/ Ernie Haugen | | 6/14/81 |
| /s/ Robert H. Bettisworth | | 6/14/81 |
| /s/ Richard L. Randolph | | 6/14/81 |
| /s/ Ken Fanning | | 6/14/81 |
| /s/ Ray H. Metcalfe | | 6/14/81 |
| /s/ Rick Halford | | 6/14/81 |
| /s/ R. Barnes | | 6/14/81 |
| /s/ Randy Phillips | | 6/14/81 |
| /s/ Mike Beirne | | 6/14/81 |
| /s/ Joe D. Montgomery | | 6/14/81 |
| /s/ Mitch Abood | | 6/14/81 |
| /s/ Patrick O'Connell | | 6/14/81 |
| /s/ Bernard C. Bylsma | | 6/15/81 |
| /s/ David Cuddy | | 6/15/81 |
| /s/ Joseph Chuckwuk | | 6/15/81 |
| Charles G. Anderson per phone call | | 6/14/81 |

Representative Halford stated that he had assumed the Chair as Speaker Pro Tempore under Rule 4 of the Uniform Rules.

Representative Halford asked that a quorum call be taken and asked that the Chief Clerk note if there are any members present and not voting.

Representative Halford stated he was voting in Representative Duncan's seat.

Representative Brown rose to a point of order protesting that this proceeding was in violation of the Uniform Rules under Rule 4 and the Constitution of the State of Alaska. He stated that Representative Halford had not been designated by the Speaker to sit in his place. He further stated bad faith has been shown as litigation is now proceeding.

Representative Halford stated that it has been three days since a session has been called and under the Constitution it requires the House be in session. He stated he had tried to contact Mr. Duncan. The Uniform Rules state that a majority can take action.

Representative Brown rose to a point of order stating the only authority would presumably come from Mason's however there

is a specific rule in Uniform Rules, Rule 4, to cover this only in regard to the duties. Mason's only applies in the absence of the presiding officer. This is an illegal proceeding.

Representative Halford asked that the Chief Clerk note the presence of members who were here but did not vote.

The Chief Clerk stated that twenty-two members voted and Representative Malone and Brown were here but did not vote.

Representative Malone stated he didn't vote because he did not believe it is a legitimate session. He further stated the session had started without a prayer.

Representative Halford stated the chaplain would be Representative Bylsma, who offered the prayer. Representative Fuller moved and asked unanimous consent that the prayer be spread on the journal. There being no objection, it was so ordered and the prayer appears as follows:

"Our Father in Heaven, we thank You for this time when we can pause and reflect on Your majesty that is shown in the mountains, streams, and skies around us.

We know that wounds heal slowly and ask that through Your omnipotent power, the healing of the wounds be accelerated.

Give us the grace to accept Your guidance, the courage to do what is right, the strength to meet adversity, and above all, wisdom in our deliberations.

In the name of our Saviour,

Amen."

Representative Halford declared the position of the Speaker of the House was vacant.

Representative Brown rose to a point of order inquiring under what authority he declared the Speaker's position to be vacant. Under Rule 1 the Speaker exists and has been elected under the Rules. Under what authority is there a vacancy?

Representative Halford stated that rule also provides that all members of the floor staff be elected for two-year terms and that is obviously not the case.

Representative O'Connell moved that nominations be open for the position of Speaker of the House.

Representative Brown objected without prejudice to his objection that the entire proceedings are illegal.

Representative O'Connell asked for a roll call vote.

Representative Halford asked that the roll call be open on the question that nominations be open.

Representative Brown rose to a point of order.

Representative Fanning rose to a point of order.

Representative Chuckwuk rose to a point of order.

Representative O'Connell stated that it was his understanding that apparently there was confusion as to who was the Speaker. The Chair in fact is vacant and we are proceeding to elect a new Speaker. It is clear under Rule 4.

Representative Halford stated that was correct.

Representative Brown rose to a point of order. It is your position that the permanent position of Speaker of the House is now vacant. I want to know under what authority you do that.

Representative O'Connell stated there was a motion on the floor and that point does not speak to that motion.

Representative Halford stated that was correct.

Representative Brown rose to a point of order.

Representative Halford stated under Sec. 308 of Mason's there is no debate. Your point of order is not directly on the motion before us. Proceed to vote.

Representative Brown rose to a point of order stating Representative Halford had not ruled on his point of order.

Representative Halford stated he would be voting in Representative Duncan's seat.

The question being: "Shall nominations for the position of Speaker be open?"

Representative Malone stated this vote is not legitimate and as a result of that, I see no reason to vote on any question before the body.

Representative Halford stated that under Rule 33 of the Uniform Rules, members are obligated to vote if they are seated on the floor. Any member who is present and does not vote is violating the Rules.

The roll was taken with the following result:

OPEN NOMINATIONS SPEAKER

| | | |
|---|---|---|
| Yeas: | 22 | Abood, Adams, Barnes, Beirne, Bettisworth, Bylsma, Cato, Chuckwuk, Cuddy, Fanning, Fuller, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe |
| Nays: | 0 | |
| Not Voting: | 18 | Anderson, Brown, Buchholdt, Carney, Clocksin, Cotten, Duncan, Freeman, Gardiner, Grussendorf, Malone, Meekins, Miller, Moss, Rogers, Smith, Vaska, Zharoff |

And so, the nominations are open for permanent Speaker of the House.

Representative O'Connell placed the name of Representative Joe Hayes in nomination.

Representative Brown rose to a point of order. You still have not replied under what authority you initially declared the position is open.

Representative Halford stated that under Sections 575 or 576 of Mason's Manual and Rule 2 of the Uniform Rules, the authority was on the basic principles of parliamentary authority.

Representative O'Connell stated that he had nominated Joe Hayes and since there were no other nominations, he moved that the nominations be closed.

Representative Brown objected without prejudice to his objection to the proceedings.

Representative O'Connell called for the roll call vote on the question that the nominations be closed.

Representative Brown placed a call of the House without prejudice to his objection to the entire proceedings.

Representative Malone inquired why this type of proceeding was being held when there is a hearing going on across the street deciding the legality of this action.

Representative Fanning rose to a point of order.

Representative Halford noted Representative Duncan's presence and invited him to vote in Representative Halford's station.

Representative O'Connell stated the question before us is "Shall nomination be closed?" The question is not debatable.

Representative Halford stated that was correct. Under Sec. 308 of Mason's Manual, the motion is not debatable.

Representative O'Connell restated the question is not debatable and the only thing to do is to proceed with the vote.

Representative Halford stated the call has been satisfied. There was no member not on the floor who was not excused on Friday.

Representative Duncan rose to a point of personal privilege asking under what authority Representative Halford assumed the Chair as Speaker.

Representative O'Connell stated that question has been satisfied in these proceedings. The proceedings have gone beyond that point. The question before us is not debatable and is "Shall nominations be closed?"

Representative Halford stated that was correct. Representative Duncan was not available.

Representative Duncan asked for an answer on his point of personal privilege.

Representative Malone rose to a point of order.

Representative Duncan again asked for an answer on his point of personal privilege.

Representative Malone rose to a point of order stating that everyone has a right to speak under the First Amendment of the U.S. Constitution.

Representative Duncan asked if he could continue his point of personal privilege.

Representative Halford noted that he was voting in Representative Duncan's station.

Representative Duncan stated he did not have a station from which to vote. This is not a legal proceeding.

The question being: "Shall nominations be closed?" The roll was taken with the following result:

NOMINATIONS BE CLOSED

Yeas: 22 Abood, Adams, Barnes, Beirne, Bettisworth, Bylsma, Cato, Chuckwuk, Cuddy, Fanning, Fuller, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 0

Not Voting: 18 Anderson, Brown, Buchholdt, Carney, Clocksin, Cotten, Duncan, Freeman, Gardiner, Grussendorf, Malone, Meekins, Miller, Moss, Rogers, Smith, Vaska, Zharoff

And so, the nominations were closed.

Representative O'Connell stated that it was his understanding that the nominations were closed. The question now before us is the vote. I remind the body that the question is not debatable. The question before us is "Shall Representative Hayes be named Speaker of the House?"

Representative Halford stated that was correct and he so ruled.

Representative Miller appealed the ruling of the Chair.

Representative Rogers appealed the ruling of the Chair.

Representative O'Connell requested an at ease.

Representative Rogers objected.

Representative O'Connell stated it was in order to proceed. There has been an appeal of the ruling of the Chair. I ask for a roll call vote on that appeal.

Representative Miller stated that since the appeal is debatable, he inquired if it was the contention of the Chair that when a name is put forward that his qualifications cannot be discussed and debated on the floor?

Representative Halford stated that is not the contention of this Coalition. They are procedural motions and are not debatable.

Representative Brown rose to a point of order inquiring how the call was satisfied when Representative Anderson was not excused.

Representative Halford stated Representative Anderson is ill.

Representative Halford invited Representative Duncan to vote in his station.

Representative Freeman rose to a point of order inquiring if the proceedings on Friday were legal and proper as to the call of the House.

Representative O'Connell stated it had been settled when the body established a quorum this morning and was not pertinent at this time.

Representative Halford stated that was correct. We are under the appeal of the ruling.

Representative Rogers asked if he is excused from voting on this question.

The question being: "Shall the ruling of the Chair be upheld?" The roll was taken with the following result:

APPEAL OF RULING

Yeas: 22 Abood, Adams, Barnes, Beirne, Bettisworth, Bylsma, Cato, Chuckwuk, Cuddy, Fanning, Fuller, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 0

Not Voting: 18 Anderson, Brown, Buchholdt, Carney, Clocksin, Cotten, Duncan, Freeman, Gardiner, Grussendorf, Malone, Meekins, Miller, Moss, Rogers, Smith, Vaska, Zharoff

Representative Halford stated he had voted in Representative Duncan's position.

And so, the ruling of the Chair was upheld.

Representative Rogers moved and asked unanimous consent that he be excused from voting.

Representative Barnes objected, therefore Mr. Rogers would be required to vote.

The question being: "Shall Representative Joe Hayes be elected Speaker of the House?"

Representative Halford stated he was voting in Representative Duncan's station and invited Representative Duncan to vote in his station.

The roll was taken with the following result:

JOE HAYES SPEAKER

Yeas: 22 Abood, Adams, Barnes, Beirne, Bettisworth, Bylsma, Cato, Chuckwuk, Cuddy, Fanning, Fuller, Halford, Haugen, Hayes, Hurlbert, Martin, Metcalfe, Montgomery, O'Connell, Phillips, Randolph, Sutcliffe

Nays: 0

Not Voting: 18 Anderson, Brown, Buchholdt, Carney, Clocksin, Cotten, Duncan, Freeman, Gardiner, Grussendorf, Malone, Meekins, Miller, Moss, Rogers, Smith, Vaska, Zharoff

And so, the motion has passed and Representative Hayes was elected Speaker of the House.

Representative Malone rose to a point of order stating Representative Halford did not respond to his question.

Representative Halford appointed Representatives Fuller and O'Connell to escort Representative Hayes to the rostrum.

Speaker Hayes assumed the Chair.

Speaker Hayes appointed Representatives Barnes and Cato to escort Representative Halford to his seat.

Representative O'Connell stated that there would be a Majority Coalition caucus on the motion to recess.

Speaker Hayes appointed the following members to the Committee on Committees:

 Representative Hayes, Chairman
 Representative Randolph
 Representative Adams
 Representative Fuller
 Representative Cotten

Speaker Hayes appointed Representatives Adams and Bettisworth to advise the Senate that the House has reorganized.

Speaker Hayes appointed Representatives Phillips and Hurlbert to advise the Governor that the House has reorganized.

Representative O'Connell stated there will be a Majority Coalition caucus on motion to recess.

Representative Gardiner announced there would be a Democratic caucus in the majority room on motion to recess.

Speaker Hayes announced a Committee on Committees meeting at 1:00 p.m. in the Butrovich Room.

Representative Halford moved that the House recess to a call of the Chair. There being no objection, the House recessed at 10:52 a.m.