Mitchell E. ABOOD, Jr., Don Bennett, John B. Coghill, Edna DeVries, Richard I. Eliason, Bettye Fahrenkamp, Jan Faiks, Frank R. Ferguson, Paul Fischer, Rick Halford, Tim Kelly, Jalmar M. Kerttula, Patrick Rodey, John C. Sackett, Arliss Sturgulewski, Fred F. Zharoff, Jack Gibbons, Peggy Mulligan, Albert P. Adams, Johne Binkley, H.A. Boucher, Bette M. Cato, Jim Duncan, Steven Frank, John G. Fuller, Peter Goll, Max F. Gruenberg, Jr., Ben F. Grussendorf, Adelheid Herrmann, Niilo E. Koponen, Ronald L. Larson, M. Mike Miller, Mike W. Miller, Mike Navarre, John Ringstad, Richard Shultz, John Sund, Robin L. Taylor, David W. Thompson, and Kay Wallis, Appellants and Cross-Appellees,

v.

LEAGUE OF WOMEN VOTERS OF ALASKA, and Anchorage Daily News, Appellees and Cross-Appellants.

Nos. S–1831, S–1841 and S–1957.

Supreme Court of Alaska.

Sept. 29, 1987.

Avrum M. Gross and Susan A. Burke, Gross & Burke, Juneau, for Senate appellants and cross-appellees Mitchell E. Abood, Jr., Don Bennett, John B. Coghill, Edna DeVries, Richard I. Eliason, Bettye Fahrenkamp, Jan Faiks, Frank R. Ferguson, Paul Fischer, Richard Halford, Tim Kelly, Jalmar M. Kerttula, Patrick Rodey, John C. Sackett, Arliss Sturgulewski, Fred F. Zharoff, Jack Gibbons, and Peggy Mulligan.

Richard M. Burnham, Findley & Burnham, Juneau, for House of Representatives, appellants and cross-appellees Albert P. Adams, Johne Binkley, H.A. Boucher, Bette M. Cato, Jim Duncan, Steve Frank, John G. Fuller, Peter Goll, Max F. Gruen-

berg, Jr., Ben F. Grussendorf, Adelheid Herrmann, Niilo E. Koponen, Ronald L. Larson, M. Mike Miller, Mike W. Miller, Mike Navarre, John Ringstad, Richard Shultz, John Sund, Robin L. Taylor, David W. Thompson, and Kay Wallis.

D. John McKay and Laura N. Cromwell, Middleton, Timme & McKay, Anchorage, for appellees and cross-appellants League of Women Voters of Alaska and Anchorage Daily News.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

These appeals arise from the superior court's decision that a claim that certain groups of state legislators held closed committee meetings and caucuses in violation of the Open Meetings Act was not justiciable, but that a claim that the closed meetings violated an implied constitutional right of public access to meetings of legislative units was both justiciable and correct. We agree that the claim of violation of the Open Meetings Act by state legislators is nonjusticiable, but contrary to the superior court's decision, we hold that there is no implied right of public access to legislative committee or caucus meetings under the Alaska Constitution. We therefore reverse.

## I. FACTS AND PROCEEDINGS

In April 1986, the League of Women Voters of Alaska, the Anchorage Daily News, and the Fairbanks Daily News Miner (collectively referred to hereafter as the League) filed an action seeking a declaratory judgment and injunctive relief against certain members of the Alaska Legislature (the Legislators) and four legislative employees. The League alleged that members of the Senate and House Finance Committees had held meetings "closed to the press and members of the public," and during those meetings had "engaged in collective fact-finding, deliberation, debate and decision-making with respect to the budget for FY 1987." The complaint further alleged that members of the House Finance Committee and the Senate Finance Committee had met jointly in meetings closed to the press and public "to discuss and attempt to obtain agreement upon the amount of funds available for the FY 1987 budget." The complaint also alleged that members of the House Finance Committee and the Senate Finance Committee had met from time to time in "closed caucus meetings" with other members of the ruling majority, and during these meetings had engaged in "substantial collective discussion, deliberation, and decision-making" concerning the FY 1987 budget. The League attached affidavits from several senators and representatives which described these meetings in some detail.

The League charged that these meetings violated the Open Meetings Act (AS 44.62.-310), the Uniform Rules of the Legislature (Rule 22), various federal and state constitutional provisions, and common law rights of access to government. The superior court was asked to declare that the closed meetings violated state and federal law, and that any appropriation bill adopted as a result of such meetings would be void unless each house of the legislature conducted "substantial, de novo, independent and public reconsideration of those substantive matters previously discussed in private." The injunctive relief sought by the League was aimed at preventing the legislature from continuing to engage in the type of meetings complained of, and from enacting the state budget for FY 1987 unless and until certain remedial action was taken.

On April 30, the superior court held a hearing on an application by the League for a temporary restraining order, and on May 1 the court issued its first decision in this case. The court concluded that litigation premised upon the alleged closed meetings held in violation of the Open Meetings Act presented a justiciable controversy. The court refused to issue the requested TRO, however, because it found that it could not fashion an order that would effectively control these legislative activities. The court then decided that it was empow-

ered to issue a final declaratory judgment solely on the basis of the League's complaint and affidavits filed in support of the motion for the TRO. The court found that a pattern of conduct which was violative of the Open Meetings Act had been established, that action taken contrary to the Act was void, and therefore that any budget decision which was reached at a closed meeting was void.

The Legislators immediately appealed from the superior court's decision and requested emergency relief, claiming that due process had been denied to them because the decision had been rendered before the Legislators had been afforded a fair opportunity to respond on the merits. After an expedited argument, we reversed the judgment issued by the superior court and remanded the case for the purpose of conducting a full hearing on the merits.

Shortly thereafter, the Legislators filed their answers to the complaint, and moved to dismiss the case or alternatively for summary judgment, arguing that the issues in the case were nonjusticiable and that the claims against the Legislators were barred by legislative immunity. The League filed a cross-motion for summary judgment on the justiciability issue.

In October 1986, the superior court entered its second decision in this case, the partial final judgment which is the subject of this appeal. The court reversed its earlier ruling and concluded that the League's claim that the closed meetings violated the Open Meetings Act was not justiciable. The League appeals from this ruling. The court proceeded to hold, however, that the public and press enjoy an implied right of access to the proceedings of the legislature under article I, section 5 of the Alaska Constitution, which guarantees freedom of speech and of the press. The court further held that a claim that the Legislators violated this constitutional right was justiciable. The court finally held that legislative immunity was not a bar to the suit. The Legislators appeal from these rulings. The State of Alaska, intervenor on behalf of the Legislators below, and the Fairbanks Daily News Miner, are not participants in this appeal.

## II. STANDARD OF REVIEW

All of the issues in this appeal raise questions of Alaska constitutional and statutory law, subject to *de novo* review. The facts of this case are not in dispute; the only facts in the record are the seven affidavits submitted by the League which attest to a pattern of meetings by legislative committee and caucus majority members which were closed to the public, the press, and sometimes minority members of the legislature. The Legislators do not deny that these meetings occurred, or that they conducted the business and made the decisions that the League alleges.

## III. VIOLATIONS OF THE OPEN MEETINGS ACT ARE NOT JUSTICIABLE

The League argues that the Legislators violated Alaska's Open Meetings Act[1] and

1. The Alaska Open Meetings Act provides:
   Agency meetings public. (a) All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions or organizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section.... Ex-

cept when voice votes are authorized, the vote shall be conducted in such manner that the public may know the vote of each person entitled to vote. This section does not apply to any votes required to be taken to organize the bodies specified in this subsection.
   (b) If excepted subjects are to be discussed at a meeting, the meeting must first be convened as a public meeting and the question of holding an executive session to discuss matters that come within the exceptions contained in (c) of this section shall be determined by a majority vote of the body. No subjects may be considered at the executive session except those mentioned in the motion calling for the executive session unless auxiliary to the main question. No action may be taken at the executive session.

the legislature's Uniform Rule 22 [2] through the closed meetings attested to in the League's affidavits. The superior court held that these claims were nonjusticiable because "[j]usticiability in this case depends on a determination that there is a *constitutional* right alleged to have been infringed." (Emphasis by the court.) As a general proposition, we agree.

In *Malone v. Meekins,* we recognized that

the established principle that courts should not attempt to adjudicate "political questions" ... stems primarily from the separation of powers doctrine.... "[I]t is the relationship between the judiciary and the coordinate branches of the ... Government ... which gives rise to the 'political question.'"

650 P.2d 351, 356 (Alaska 1982) (quoting *Baker v. Carr,* 369 U.S. 186, 210, 82 S.Ct. 691, 706, 7 L.Ed.2d 663, 682 (1962)). *See also Abood v. Gorsuch,* 703 P.2d 1158, 1160 (Alaska 1985) ("There are certain questions involving coordinate branches of the government, sometimes unhelpfully called political questions, that the judiciary will decline to adjudicate.").

Our statement in *Abood* suggests the difficulty inherent in precisely defining the contours of the doctrine of justiciability. It is not possible to draw the exact boundary separating justiciable and nonjusticiable questions.

Justiciability is of course not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures, including the appropriateness of the issues for decision ... and the actual hardship to the litigants of denying them the relief sought.

*Poe v. Ullman,* 367 U.S. 497, 508–09, 81 S.Ct. 1752, 1758–59, 6 L.Ed.2d 989, 999 (1961) (Frankfurter, J., plurality opinion). Nor will merely characterizing a case as nonjusticiable or political in nature render it immune from judicial scrutiny. *Malone,* 650 P.2d at 356. Rather, to identify those political questions which will be held to be nonjusticiable, we have utilized the approach adopted by the United States Supreme Court in *Baker v. Carr. Id.* at 357; *see also Abood,* 703 P.2d at 1160. In *Malone,* we explained that the Supreme Court

(c) The following excepted subjects may be discussed in an executive session:

(1) matters, the immediate knowledge of which would clearly have an adverse effect upon the finances of the government unit;

(2) subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion;

(3) matters which by law, municipal charter, or ordinance are required to be confidential.

(d) *This section does not apply to*

(1) judicial or quasi-judicial bodies when holding a meeting solely to make a decision in an adjudicatory proceeding;

(2) juries;

(3) parole or pardon boards;

(4) meetings of a hospital medical staff; or

(5) meetings of the governing body or any committee of a hospital when holding a meeting solely to act upon matters of professional qualifications, privileges, or discipline.

(e) Reasonable public notice shall be given for all meetings required to be open under this section....

(f) Action taken contrary to this section is void.

AS 44.62.310.

**2.** Uniform Rule of the Legislature 22 provides: OPEN AND EXECUTIVE SESSIONS. (a) All meetings of a legislative body are open to all

legislators, whether or not they are members of the particular legislative body that is meeting, and to the general public except as provided by (b) of this rule.

(b) A legislative body may call an executive session at which members of the general public may be excluded for the following reasons:

(1) discussion of matters, the immediate knowledge of which would adversely affect the finances of a government unit;

(2) discussion of subjects that tend to prejudice the reputation and character of a person;

(3) discussion of a matter that may, by law, be required to be confidential.

(c) When a legislative body desires to call an executive session in accordance with (b) of this rule, the body shall first convene as a public meeting and the question of holding an executive session shall be determined by a majority vote of the members present.

(d) The provisions of this rule may not be interpreted as permitting the exclusion of a legislator from an executive session, whether or not the legislator is a member of the body that is meeting. A legislator not a member of the body holding an executive session shall, however, be subject to the same rules of confidentiality and decorum as pertain to regular members of the body.

of the United States had identified "various elements, one or more of which is '[p]rominent on the surface of any case held to involve a political question....' These elements included (1) a textually demonstrable commitment of the issue to a coordinate political department...." 650 P.2d at 357 (citing *Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710, 7 L.Ed.2d at 686).

The Legislators argue that article II, section 12 of the Alaska Constitution contains an express textual commitment of authority, which specifically and exclusively authorizes the legislature to adopt its own rules of procedure. Article II, section 12 provides in part: *"Rules.* The houses of each legislature shall adopt uniform rules of procedure." Pursuant to this authority, the legislature has adopted Uniform Rule 22, in language substantially identical to the Open Meetings Act, providing that all meetings of a legislative body are open to the general public. *Compare* notes 1 and 2, *supra.* The Legislators argue that since the constitution commits to the legislature the authority to set its own procedures, only the legislature may determine whether the Open Meetings Act should apply to the legislature, and how it should apply consistent with Uniform Rule 22. The Legislators rely on this court's decisions in *Malone* and *Abood,* and on the Florida Supreme Court's opinion in *Moffitt v. Willis,* 459 So.2d 1018 (Fla.1984).

In *Malone,* we declined to address the question of whether the legislature had violated AS 24.10.020, which prohibited a person other than the Speaker of the House from convening a session of the House. We held that the matter of the election or removal of the Speaker was committed by the constitution to the House, and the judicial branch owed respect to that body. We explained that

> [s]uch a declaration would, in our view, be an unwarranted intrusion into the business of the House. To be sure, the judicial branch of government has the constitutionally mandated duty to ensure compliance with the provisions of the Alaska Constitution, including the compliance by the legislature. But a statute such as AS 24.10.020 relates solely to the

internal organization of the legislature, a subject which has been committed by our constitution [Article II, section 12] to each house.

650 P.2d at 356 (footnote omitted). We also considered the question whether the "reasonable public notice" requirement of the Open Meetings Act, AS 44.62.310(e), was violated by the legislature and said, "we regard this question as it relates to the internal organization of one of the Houses of the legislature to be nonjusticiable." *Id.* at 359.

In *Abood,* we held nonjusticiable the question of whether a joint session of the legislature could legally be presided over by the President of the Senate in the absence of the Speaker of the House. At issue was the interpretation of the legislature's Uniform Rule 51 which required the presence of both officers. We agreed with the trial court that the issue arose out of "the rulemaking powers of the legislature." 703 P.2d at 1164. We also agreed that "out of respect owed to a coordinate branch of state government, [we must] defer[ ] to the wisdom of the legislature concerning violations of legislative rules which govern the internal workings of the legislature." *Id.*

■ Our holdings in *Malone* and *Abood* are controlling in this case. The Alaska Constitution expressly commits to the legislature authority to adopt its own rules of procedure. The question whether legislative business should be conducted in open or closed sessions is a procedural question which has traditionally been the subject of legislative rules. *See Society of Professional Journalists v. Secretary of Labor,* 616 F.Supp. 569, 577 (D. Utah 1985) (a right of access to administrative hearings is more a procedural right than a substantive right); *see also* P. Mason, *Manual of Legislative Procedure* sec. 630 (1979) (committee meetings open to public except when considering specified restricted subjects). Pursuant to this constitutional grant of authority, the legislature has enacted Uniform Rule 22 and the Open Meetings Act in substantially identical language.

The League asserts that the Legislators have violated both the Uniform Rule and the Open Meetings Act. If they have, to hold that these claims are justiciable places the judiciary in direct conflict with the legislature's constitutionally authorized rulemaking prerogative. We agree with the Florida Supreme Court that it is the legislature's prerogative to make, interpret and enforce its own procedural rules and the judiciary cannot compel the legislature to exercise a purely legislative prerogative. *Moffitt v. Willis,* 459 So.2d 1018, 1021 (Fla. 1984).[3] As we stated in *Malone,* "except in extraordinary circumstances, as where the rights of persons who are not members of the legislature are involved, it is not the function of the judiciary to require that the legislature follow its own rules." 650 P.2d at 359. In support of this proposition, we cited *United States v. Smith,* 286 U.S. 6, 33, 52 S.Ct. 475, 478, 76 L.Ed. 954, 958–59 (1932), where the Court discussed the rule that the only justiciable limitations on a legislative body's power to adopt rules of its proceedings are that the body

> may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rules and the result which is sought to be obtained. But within these limitations all matters of method are open to the determination of the house....

*Id.* at 33, 52 S.Ct. at 478, 76 L.Ed. at 959, quoting *United States v. Ballin,* 144 U.S. 1, 5, 12 S.Ct. 507, 509, 36 L.Ed. 321, 324 (1892). *See also Exxon Corp. v. F.T.C.,* 589 F.2d 582, 590 (D.C.Cir.1978) ("Although the courts will intervene to protect constitutional rights from infringement by Congress, ... where constitutional rights are not violated, there is no warrant for the judiciary to interfere with the internal procedures of Congress ..."), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979); *Consumers Union of United States v. Periodical Correspondents' Ass'n,* 365 F.Supp. 18, 24 (D.D.C.1973) ("A congressional rule which infringes upon the constitutional rights of persons other than Congressmen presents a proper question for the judiciary"), *rev'd on other grounds,* 515 F.2d 1341 (D.C.Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 780, 46 L.Ed.2d 640 (1976); *State ex rel. City Loan & Sav. Co. v. Moore,* 124 Ohio St. 256, 177 N.E. 910 (1931) (the legislature's disregard of its own rules as to its lawmaking procedures is not subject to judicial inquiry, where the rule is not embraced in the constitution); *Sweitzer v. Territory,* 5 Okl. 297, 47 P. 1094 (1897) (since the court cannot declare an act of the legislature void on account of noncompliance with rules of procedure made by itself to govern its deliberation, the failure of the legislature to observe a statute enacted by itself, and concerning the legislature's procedure for lawmaking, was no ground for refusing to enforce a

**3.** The facts in *Moffitt* are virtually identical to the facts in this case. Newspaper publishing companies brought a declaratory judgment action against the state house speaker and senate president alleging that secret meetings of the legislature violated the legislature's rule requiring open meetings, a statute requiring the legislature to follow its own rules, and various state and federal constitutional provisions. The Florida Supreme Court held that the courts lacked jurisdiction to hear the case, explaining:

> In our view, a judicial determination of this matter hinges on the meaning of legislative committee meetings and what activity constitutes such a meeting. At this point, the judiciary comes into head-to-head conflict with the legislative rulemaking prerogative.
>
> Article III, section 4(a) of the Florida Constitution gives each house the power to determine its own rules of procedure....

> [T]his provision gives each house the power and prerogative not only to adopt, but also to interpret, enforce, waive or suspend whatever procedures it deems necessary or desirable so long as constitutional requirements for the enacting of *laws* are not violated.... It is the final product of the legislature that is subject to review by the courts, not the internal procedures.
>
> · · · · ·
>
> Just as the legislature may not invade our province of procedural rulemaking for the court system, we may not invade the legislature's province of internal rulemaking.... A member of the legislature can raise a point of order regarding a violation of any of the rules of the house or senate. That is the proper forum for determining the propriety of the activities complained of in the suit below.
>
> *Id.* at 1021–22 (emphasis by the court, citations omitted).

statute passed in noncompliance with the rule, where there was no constitutional provision mandating a particular procedure); *State v. Cumberland Club*, 136 Tenn. 84, 188 S.W. 583, 585 (1916) (where a state legislature has the right under its constitution to make its own rules of procedure, it must be the judge of those rules, and all the court can do is to ascertain whether the constitution has been complied with). Likewise, in *Abood*, we noted that the "nonjusticiability [of rules violations] doctrine would not apply to cases involving our constitutionally mandated duty to insure compliance with the provisions of the Alaska Constitution, including compliance by the legislature." 703 P.2d at 1161.[4]

We observe that in *Smith*, the Court held that where the "construction to be given to the rules affects persons other than members of the Senate, the question presented is of necessity a judicial one." 286 U.S. at 33, 52 S.Ct. at 478, 76 L.Ed. at 959. In this case, the construction of the Open Meetings Act and Uniform Rule 22 does not affect persons other than members of the legislature in the same sense as was the case in *Smith*. There, the controversy was between the United States Senate and an appointee of the President, the resolution of which depended upon the right of the Senate to reconsider, under its rules, its prior confirmation of the President's nominee after the President had appointed the nominee pursuant to the earlier confirmation. Here, there is no specific individual with any particular right at stake in the controversy. Rather, the right granted under the Open Meetings Act as it applies to the legislature, and under Uniform Rule 22, is a right of the public generally to observe the legislature's proceedings.

It is true that the legislature has identified in the Open Meetings Act the public's interest in open meetings, AS 44.62.312(a),

and we have recognized that the Act exists primarily to advance the people's interest, and that it is applicable to the legislature.[5] *Alaska Community Colleges' Federation of Teachers v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984). We do not retreat from these principles. The question before us, however, is not whether the Open Meetings Act applies to the legislature, but rather whether the legislature's alleged violation of the Act or Uniform Rule is justiciable.[6] As we have concluded, the Open Meetings Act, as it applies to the legislature, like the legislature's Uniform Rule 22, merely establishes a rule of procedure concerning how the legislature has decided to conduct its business. Of course, having made the rule, it should be followed, but a failure to follow it is not the subject matter of judicial inquiry. *See State ex rel. City Loan & Sav. Co. v. Moore*, 124 Ohio St. 256, 177 N.E. 910, 911 (1931).

If there were allegations that the legislature, acting pursuant to or in violation of one of its rules of procedure, had infringed on the rights of a third person not a member of the legislature as in *Smith*, or had ignored constitutional restraints or violated fundamental rights, then the "exceptional circumstances" exception to the rule of nonjusticiability would come into play. None of these factors are involved in this case, however, and there is no basis for employing the "exceptional circumstances" exception.

Thus, because the constitution commits to the legislature the authority to provide for its own rules of procedure, and because the question of whether a legislative committee meeting or caucus meeting shall be open or closed falls within this grant of authority, we regard the question whether the Legislators have violated the Open

---

**4.** We adjudicated the question presented as to the quorum needed for acts of the legislature in joint session because it "is a question of Alaska constitutional law.... to which the nonjusticiability doctrine does not apply." *Id.* at 1161.

**5.** Even so, it is beyond doubt that the legislature has the power to exempt itself at any time from the coverage of the Open Meetings Act.

**6.** *Compare Cole v. State*, 673 P.2d 345, 349 (Colo. 1983) (held: requirement of open meetings law that legislative caucus meetings be open to public does not conflict with state constitutional provision authorizing legislature to establish its own rules, however, court did not discuss justiciability).

Meetings Act or Uniform Rule 22 to be nonjusticiable. As we have recognized, the legislature's violation of its rules of procedure may be justiciable in "exceptional circumstances" of constitutional dimension. If the League's claim is to survive this justiciability challenge, it must involve a right protected by either the Alaska Constitution or the United States Constitution.

## IV. NO IMPLIED CONSTITUTIONAL RIGHT OF ACCESS TO LEGISLATIVE MEETINGS

■ The United States Constitution does not expressly require the Congress to hold any of its meetings in public. There is also no common law right to attend meetings of government bodies. *Society of Professional Journalists*, 616 F.Supp. at 572; *see* Watkins, *Open Meetings under the Arkansas Freedom of Information Act*, 38 Ark.L.Rev. 268 (1984) (Watkins); Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"*, 75 Harv.L.Rev. 1199, 1203 (1962) (Note). Indeed, the tradition of the English Parliament, which was subsequently carried on in the legislative bodies of Colonial America, was to hold legislative debate in secret and to prohibit publication of legislative proceedings. *Society of Professional Journalists*, 616 F.Supp. at 572 (observing that both the Continental Congress and the Constitutional Convention conducted their proceedings in secret, and thus "[i]t is not surprising ... that the Framers of the Constitution did not include an express provision in the Constitution that required Congress to deliberate in public"); Watkins, *supra* at 271.

On the other hand, at least thirty-five states have constitutional requirements that their legislatures meet in public.[7] *See* Note, *supra* at 1203. All fifty states, the District of Columbia, and the federal government have some form of an open meetings act. Watkins, *supra* at 268, 272. These acts have never been held to be constitutionally required, however. *Society of Professional Journalists*, 616 F.Supp. at 572; *see* Watkins, *supra* at 272.

There is one area where a constitutional right of access clearly does exist, namely, in judicial proceedings. The United States Supreme Court has found under the first amendment that the public and press have a right of access to criminal trials even where the defendant expressly waives his or her right to a public trial and desires the proceedings to be closed. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality decision adopted as a majority decision in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)). The Supreme Court's rationale for finding this unenumerated right of access is significant. First, criminal trials have historically been open to the press and public. *Globe Newspaper*, 457 U.S. at 605, 102 S.Ct. at 2619, 73 L.Ed.2d at 256. Second, the right of access to criminal trials plays a significant role in the proper functioning of the judicial process. *Id.* at 606, 102 S.Ct. at 2619, 73 L.Ed.2d at 256.

■ In this case the superior court utilized the analysis applied by *Richmond Newspapers/Globe Newspaper* to find that the public and the press have an implied right under the Alaska Constitution, article I, section 5, to attend certain meetings of legislative units. The court's analysis is in two parts: an historical review, looking to the practice in effect at the time of the adoption of the Alaska Constitution to determine what the framers intended, and a functional evaluation seeking to determine the effect that a requirement of public access to legislative meetings would have.

---

7. The State of Oregon amended its constitution in 1974 and 1978 to require that its legislature conduct its deliberations in public. This amendment is found in that part of the Oregon Constitution dealing with the legislative branch, and provides:

The deliberations of each house, of committees of each house or joint committees and of committees of the whole, shall be open. Each house shall adopt rules to implement the requirement of this section and the houses jointly shall adopt rules to implement the requirements of this section in any joint activity that the two houses may undertake.

Or.Const. article IV, § 14.

We disagree with this analysis because the history of the Alaska Constitutional Convention indicates that the framers of our constitution did not intend to confer a right of public access to meetings of legislative committees or legislative caucuses.[8]

The constitution expressly provides that it is the legislature's province to establish its own rules of procedure. Alaska Const. article II, section 12. We have held in part III of this opinion that this provision includes the authority to make rules concerning whether legislative bodies shall conduct their business in open or closed meetings. Of course, if the constitution contained an express or implied guarantee of public access to legislative meetings, the legislature could not, pursuant to article II, section 12, adopt a rule or enact a law to the contrary.

At the outset, we are confronted with the rule that the intent underlying constitutional language should first be gathered from the language itself. *Baker v. City of Fairbanks*, 471 P.2d 386, 397 (Alaska 1970). Although we would naturally expect a provision requiring legislative bodies to conduct their meetings in public to be found in article II, which pertains to the legislature, it is clear that the constitution contains no express provision there, or in the declaration of rights in article I, or anywhere else. Thus, we must determine if such a right may be implied.

We begin by seeking to determine the intent of the framers. We find evidence of such intent in the debate at the Constitutional Convention over the question of the public's access to the Convention's own committee meetings. That debate shows clearly that the delegates were aware of the issue and of the necessity for dealing with it directly.

One of the first orders of business for the Constitutional Convention was to adopt procedural rules to govern its own activities in drafting the constitution. Rule 19 concerned public access to the deliberations of the Standing Committees of the Conven-

tion. As originally proposed, Rule 19 provided:

> The deliberations of the Standing Committees shall not be open to the public except upon invitation of the Committee. Each Standing Committee shall notify the Secretary of the time and place of meetings, and the Secretary shall make such notice public.

1 *Proceedings of the Alaska Constitutional Convention* 75 (November 9, 1955) (hereafter *"Convention Proceedings"*). Delegate Rivers spoke first in support of the Rule.

> The committees have a lot of work to do and need freedom to express themselves to arrive at a consensus of their thinking and, accordingly, the committees in all fairness, could hear anyone who requested to be heard, and that is the reason for saying that the time of these committee meetings shall be posted or publicized by the Secretary. Everyone is supposed to know when we are meeting so that anyone can request to be heard, but we don't want to have them open to the public while we try to develop a consensus of our thinking during all of our exploratory work. We think the committees can do better work if the public is there on invitation or if particular persons who want to be heard, do so upon request, and that is the reason for the rule.

*Id.* Delegate Hellenthal spoke in opposition to the Rule, stating:

> This is an unusual rule. I doubt if any other body such as this has such a rule. I know the Congress of the United States does not have such a rule, and I think that we would put ourselves open to the well-deserved criticism that we are meeting in secret session, which has an ugly connotation, but which criticism will be levelled at the group unless we adopt a more normal method. I would suggest the method of executive session, that by majority of two-thirds vote of the members of the committee, that the public be excluded to consider stated objects....

---

8. We are not presented with the issue whether there may be an implied constitutional right of the public and the press to attend floor sessions of the two houses of the legislature, or to attend sessions of the legislature meeting as a whole. Our opinion is limited to meetings of legislative committees and so-called caucuses.

That is the rule of the United States Congress. I think this rule will involve us in great difficulties, and I see absolutely no need for it. Now if the occasion develops that crackpots or someone (I don't think there are many crackpots in Alaska) start plaguing us, then we can take a prophylactic rule such as the one recommended here, but in the absence of that demonstration I think that this rule has no place before our body.

*Id.* at 76.

Delegate Sundborg took issue with Delegate Hellenthal's statement.

Many another deliberative body and I think practically every deliberative body has a rule such as this. Committee meetings of the United States Congress are not open to the public except upon invitation of the committees. Hearings are but committee meetings, I've been excluded from them many times, in Congress. I might say that our legislative committee meetings are not open to the public except upon invitation.

*Id.*[9] After noting the secret nature of both committee meetings and plenary sessions of the Federal Constitutional Convention, Delegate Sundborg commented:

I feel we do have to have the freedom which we would have in committee only if we can speak without having a lot of people sitting around breathing down our necks. If a matter comes before a committee which would require the presence of the public, or where the presence of the public would help the committee reach a solution, I am sure any committee would be glad to invite the public in, ... but I just don't think that business can be conducted efficiently if the public is walking in and out wandering around through these committee rooms all the time we are trying to do serious business.

*Id.* at 76–77.

Delegate Vic Fischer moved that the first sentence of Rule 19 as proposed be amended to read:

The deliberations of the Standing Committees shall be open to the public, unless the Committee by two-thirds vote of all the members to which it is entitled votes to hold an executive session.

*Id.* at 77. This proposal met with heated disagreement from Delegates Hermann, Taylor, and Barr. *See id.* at 77–79. Delegate Hermann stated:

I think that ... the Convention should remember that no business conducted in the committee itself is even final. What we shall be doing in these committees is threshing out minor details, maybe some major ones too, but the point of the matter is that we have no power to translate that into action until it is brought before the Convention as a whole. If the public meetings are open to the Convention, which they certainly will be at all times, any discussion on any matter pertinent to the Constitution will be open to the public.

*Id.* at 77–78.

At this point the Convention recessed for lunch. Over the lunch recess a compromise was reached. *Id.* at 80–81. The compromise proposal, adopted by unanimous consent, provided:

The deliberations of the Standing Committees shall be open to the public at such times as may be designated by the respective committees. If a committee finds it to be in the public interest, upon application any citizen may attend committee sessions....

*Id.* at 81. It is clear that although Rule 19 was crafted in terms of open meetings, in fact the rule establishes a normal procedure of closed meetings unless a committee acted to open a meeting to the public.

In light of the delegates' debate concerning the merits of adopting a procedural rule governing the public's right of access to the Convention's committee meetings, and of their unanimous decision to estab-

---

**9.** Although not required by the United States Constitution, the United States Senate has met in public on a regular basis since 1794, and the House since the War of 1812. Committee sessions, where the bulk of the Congress' work is done, were not routinely open to the public until the mid–1970's. Watkins, *supra* at 271–72.

lish a norm of closed meetings, we do not believe that they intended that the constitution would direct that committee meetings of the future state's legislature should be open to public access. Rather, it is our view that the Constitutional Convention left this topic to the legislature by providing in article II, section 12 that the legislature was authorized to adopt its own rules of procedure.

Our conclusion is supported by the constitutional framers' understanding that territorial legislative committee meetings were usually closed to the public. The practice of closed territorial legislative committee meetings was noted in the delegates' debate on whether the Convention's Standing Committee meetings should be closed to the public. *Convention Proceedings* at 76 (comment of Delegate Sundborg). Given this practice, it seems highly improbable that the delegates, if they intended a contrary rule, would be content to leave it for discovery by implication. Rather, since historically the rule was one of closed meetings, it is most reasonable to conclude that the delegates thought they were not changing traditional practices. *See Baker v. City of Fairbanks*, 471 P.2d 400–401.

We conclude that the framers of the Alaska Constitution did not intend that the constitution require that committee and caucus meetings of legislative bodies be conducted in public. Therefore, we hold that there is no implied right of access to such meetings under the Alaska Constitution.

## V.

That part of the superior court's decision which held as nonjusticiable allegations that the Legislators violated the Open Meetings Act or legislative rules is affirmed. That part of the court's decision which held that the public and press have an implied constitutional right of access to meetings of committees of the legislature and caucuses of legislators is reversed.[10]

The case is remanded with instructions to dismiss the League's action.

AFFIRMED in part, REVERSED and REMANDED in part.

COMPTON, Justice, dissenting.

In 1972 the Alaska Legislature amended the Open Meetings Act to express that

[i]t is the policy of the state that

(1) the governmental units mentioned in AS 44.62.310(a) exist to aid in the conduct of the people's business;

(2) it is the intent of the law that actions of those units be taken openly and that their deliberations be conducted openly;

(3) *the people* of this state do not yield their sovereignty to the agencies which serve them;

(4) *the people*, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know;

(5) *the people's right to remain informed* shall be protected so that they may retain control over the instruments they have created.

AS 44.62.312(a) (emphasis added). It is clear that the Open Meetings Act provides for and protects a public right. The Act creates an obligation on the part of all state governmental bodies to open their meetings to public scrutiny. This court has held that the Act by its own language "plainly includes the state legislature." *Malone v. Meekins*, 650 P.2d 351, 358 (Alaska 1982). Therefore, the legislature cannot now unilaterally and without public debate abrogate that right.

As the court recognizes, the contours of the doctrine of justiciability are not easily defined. To guide our deliberations, we have in the past looked to the criteria enunciated by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *See Malone v. Meekins*, 650 P.2d at 356–57. The relevant *Baker* criterium discussed by the court today is "a textually demonstrable constitutional commit-

10. Our resolution of the justiciability and implied constitutional right of access issues makes it unnecessary to address the parties' conten-

tions as to legislative immunity (Alaska Const. Article II, section 6).

ment of the issue to a coordinate political department...." 369 U.S. at 217, 82 S.Ct. at 710, 7 L.Ed.2d at 686. This court recognizes, and I do not contest, that the Alaska Constitution contains an express textual commitment authorizing the legislature to adopt its own *rules* of procedure.[1] Yet the issue before the court is the public's statutory right to be informed. Our past cases have not held that resolution of this issue lies outside the province of the judiciary, contrary to the opinion of this court today.

In *Malone*, this court addressed the justiciability of legislative rules regarding who may call the legislature to order. This court refused to act as a "sort of super parliamentarian." 650 P.2d at 359. We also declined to determine what public notice is "reasonable" under the Open Meetings Act. AS 44.62.310(e). I do not seek to overrule that precedent. If courts were to act as "super parliamentarians," thereby denying the legislature reasonable interpretations of its internal rules, the legislature would be hobbled to the point of inactivity. However, the legislature's disregard of a right granted by the Open Meetings Act does not deserve the same deference as its interpretation of a phrase contained in that Act. This is more than a matter of degree. It is a matter of the complete denial of the public's express right to witness important legislative debate. Thus *Malone* does not control in the current case.

In *Abood v. Gorsuch*, 703 P.2d 1158 (Alaska 1985) we held non-justiciable the question of whether the President of the Senate could legally preside over a joint session of the legislature in the absence of the Speaker of the House. We agreed with the trial court to defer "to the wisdom of the legislature concerning violations of *legislative rules* which govern the internal workings of the legislature." 703 P.2d at 1164 (emphasis added). We did, however, under the guise of constitutional interpretation, see fit to decide whether a quorum was present. At issue was whether the quorum must be composed of a majority of each house respectively or, alternatively,

whether it need only be a simple majority of the total number of legislators. We held the latter, clearly deciding a procedural issue. *Id.* at 1162. Our definition of what constituted a "quorum," a parliamentary matter seemingly committed to the rule making authority of the legislature, is distinct from "insur[ing] compliance with the provisions of the Alaska Constitution." Thus, *Abood* is inapposite to the current case because it dealt with a dispute solely between members of the legislature over their own rules. What precedential value the case does possess shows that this court will decide certain procedural issues for the legislature and that this court has not been completely deferential in the past.

The court also relies on *Moffitt v. Willis*, 459 So.2d 1018 (Fla.1984). The court argues that "[t]he facts in *Moffitt* are virtually identical to the facts in this case." This simply is not so. The *Moffitt* court was faced with interpretation of a broad constitutional free speech clause and specific legislative rules. The court deferred to the legislature's rule making power only after limiting the case by observing:

> We are not confronted with whether a statute applies, rather we are asked to allow the courts to determine when and how legislative rules apply to members of the legislature.

*Moffitt*, 459 So.2d at 1022. Thus the *Moffitt* court expressly excluded from its holding the specific issue raised in the case at bar.

Moreover, we have recognized the public nature of the Open Meetings Act. In *Alaska Community Colleges' Federation of Teachers v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984) we stated that

> [s]ection 312 makes clear that the [Open Meetings Act] exists primarily to advance the interests of "the people of this state." When the sunshine act is breached it is "the people's right to remain informed" which sustains injury.

The Supreme Court in *United States v. Smith*, 286 U.S. 6, 33, 52 S.Ct. 475, 478, 76

---

1. Alaska Const. art. II, § 12. The fact that the legislature has adopted a rule which mirrors the statute should not confuse the issue before the court. Adoption of a rule similar to a statute cannot erode the force of the statute as law. If the legislature wishes to exempt itself from the requirements of the statute it can do so in the act itself.

L.Ed. 954, 959 (1932) held that where the "construction to be given to the rules affects persons other than members of the Senate, the question presented is of necessity a judicial one." *Smith*, then, is more analogous to the current issue than the other cases cited by this court.[2] Whereas in *Malone* and *Abood* the controversy was between members of the legislature, who were parties to the rule making and enforcement proceedings, in *Smith* the affected person was other than a member of the [United States] senate and unable to personally participate in rectifying the wrong done him. So it is in the current case. The affected persons are not members of the legislature and in fact their interests are at odds with the legislature. Their only recourse is to the courts which, as *Smith* suggests, should not decline to decide these disputes.

Finally, it is observed that the doctrine of nonjusticiability of issues concerning legislative action "is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. at 210, 82 S.Ct. at 706, 7 L.Ed.2d at 682. But, while the separation of powers theory requires some deference by the judiciary to a coequal branch of government, the theory originated as a system of checks and balances on the power of each branch. The line between when this court should act with deference and when it should check the power of the legislature is not easily drawn. However, "where the rights of persons who are not members of the legislature are involved ...," *Malone*, 650 P.2d at 359, this court should be more willing to defend those rights than it shows itself to be today.[3]

---

**2.** The court distinguishes *Smith* on the ground that in *Smith* a specific individual was affected whereas in the case at bar it is the right of the public that is affected. The court does not explain the significance of this distinction.

**3.** I do not believe that the constitutional issue addressed in Part IV of the court's opinion need be decided. The clear policy mandate of the statute should be dispositive of the issues presented in this case. This approach adheres "to the doctrine of abstaining from answering constitutional questions when other dispositive grounds exist." *Deubelbeiss v. C.F.E.C.*, 689 P.2d 487, 491 (Alaska 1984) (Compton, J., concurring).